United States District Court
Southern District of Texas
**ENTERED**
April 02, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ZAHIR KARIM ALI, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-0140 |
| | § | |
| DEPARTMENT OF HOMELAND SECURITY, *et al*, | § | |
| | § | |
| Respondents. | § | |

## **MEMORANDUM AND ORDER**

Petitioner Zahir Karim Ali was taken into the custody of Immigration and Customs Enforcement (ICE) on January 8, 2020 in preparation for his imminent removal to Pakistan. (Doc. No. 1, at 3). However, due to developments in the global pandemic caused by the novel coronavirus, the Government has been unable to remove Petitioner. Petitioner remains in immigration detention at the Montgomery Processing Center in Conroe, Texas. Petitioner has petitioned this Court for a writ of habeas corpus, seeking his release. Because the Government is not significantly likely to remove Petitioner in the reasonably foreseeable future, Petitioner's continued detention does not serve the purpose for which he was originally detained, and thus, exceeds the Government's statutory authorization. For this reason, the Court **GRANTS** Petitioner's Petition for Habeas Corpus.

### I. **BACKGROUND**

Petitioner is a Pakistani national. (Doc. No. 1, at 8). He first arrived in the United States in November 1995. *Id.* He attempted to enter with an altered passport and was ordered excluded and deported by an immigration judge. (Doc. No. 34, at 2). He successfully entered the United States in 1996. (Doc. No. 1, at 8). In August 2010, Petitioner filed an application for adjustment of status

to lawful permanent resident based on a petition by his U.S. citizen father. *Id.* In response, the Government reinstated Petitioner's exclusion order from 1995 and placed him in detention. (Doc. No. 34, at 2). Petitioner remained in post-final-order-of-removal custody for almost three years, between November 2010 and September 2013, while he continued to seek relief from removal. (Doc. No. 1, at 9). In September 2013, Petitioner was released from detention on an Order of Supervision after a determination that there was no significant likelihood that Petitioner would be removed in the foreseeable future. *Id.*

For over six years, from September 2013 until January 8, 2020, Petitioner complied with all conditions of his release. *Id.* Petitioner was detained again, however, on January 8, 2020 because the Pakistani government was preparing to issue Petitioner a travel document to effectuate his removal. (Doc. No. 34, at 3). Petitioner has been detained at Montgomery Processing Center in Conroe, Texas since then.

The Government obtained Petitioner's travel documents on February 27, 2020. *Id.* Petitioner was originally scheduled to be removed on March 5, 2020. *Id.* However, Thai Airways cancelled the flight on March 3, 2020 due to the spread of COVID-19. *Id.* The Government attempted to coordinate an alternate travel itinerary; however, the Pakistani government closed its borders to all international flights on March 21, 2020. *Id.* Pakistan's border closure currently extends through April 11, 2020. (Doc. No. 36). The Government has no current proposed itineraries or estimated date of removal because of the border closure.

Petitioner has no criminal history and had no disciplinary incidences while in ICE custody. (Doc. No. 34-1, at 4–5). The Government does not consider him to be a threat to the community. *Id.* at 6.

Petitioner filed his original petition for habeas on January 14, 2020. (Doc. No. 1). On March 13, 2020, Petitioner filed an Emergency Motion for Release in response to the COVID-19 pandemic. (Doc. No. 30). At that point, the Government's original removal itinerary had been cancelled and the Government was waiting for approval of its alternate travel itinerary. The Court denied Petitioner's Emergency Motion based on the Government's pending alternate travel itinerary, but scheduled a status conference for April 6, 2020. (Minute Entry 3/16/2020). On March 23, 2020, Petitioner filed an Emergency Update, notifying the Court that Pakistan had closed its borders to international flights and, accordingly, Petitioner could not be removed on the Government's alternate itinerary. (Doc. No. 32). On April 2, 2020, Petitioner filed another Emergency Update, notifying the Court that Pakistan had extended its border closure to April 11, 2020. (Doc. No. 36).

## II. DISCUSSION

Petitioner raised many claims in his original habeas petition. However, as the case has progressed and circumstances have changed, parties have focused on Petitioner's claim that his detention violates 8 U.S.C. § 1231 and the Constitution because his removal is not reasonably likely in the foreseeable future. The Court will address only this claim.

As an initial matter, the Government argues that the Court has no jurisdiction in this case. However, the Supreme Court has clearly found jurisdiction under the federal habeas statute 28 U.S.C. § 2241 in challenges to post-final-order-of-removal detention. *See Clark v. Martinez*, 543 U.S. 371, 386–87 (2005); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also Alam v. Nielsen*, 312 F. Supp. 3d 574, 581 (S.D. Tex. 2018) (finding habeas jurisdiction over challenge to government's revocation of order of

supervised release). Because Petitioner is arguing that he is being unlawfully detained in violation of a federal statute and the Constitution, this Court has jurisdiction to decide his habeas petition.

On the merits, Petitioner argues that his detention is unlawful because the global coronavirus pandemic has made his removal unlikely in the foreseeable future. 8 U.S.C. § 1231(a)(6) gives the Government authority to detain certain noncitizens with final orders of removal beyond the initial ninety-day removal period. The Supreme Court, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), found that § 1231(a)(6) authorized continued detention for only as long as removal was "reasonably foreseeable." *Id.* at 699; *see also Clark*, 543 U.S. at 384 ("[*Zadvydas*] held that . . . the statute should be read . . . to authorize detention only for a period consistent with the purpose of effectuating removal."). The *Zadvydas* Court held that post-removal-period detention that extended beyond six months would be considered presumptively unconstitutional. *Zadvydas*, 533 U.S. at 701. Beyond this period, when a noncitizen presents good reason to believe that there is "no significant likelihood of removal in the reasonably foreseeable future," the Government must provide evidence sufficient to rebut that showing in order to continue detaining that noncitizen. *Id.* This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits. *See Clark*, 543 U.S. at 384; *see also* Ian Bratlie & Adriana Lafaille, *A 180-Day Free Pass?* Zadvydas *and Post-Order Detention Challenges Brought Before the Six-Month Mark*, 30 Geo. Immigr. L.J. 213, 239 (2016) (noting that six-month presumption is not an element of authorizing statute, but rather, an aid to courts; allowing a six-month bright line rule would give government authority beyond the statute to arbitrarily detain without judicial review for six months). Rather, habeas courts have the duty to ask whether detention has "exceed[ed] a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699–700. Where removal is not reasonably foreseeable, "the court should

hold continued detention unreasonable and no longer authorized by statute," and release the petitioner under appropriate supervised conditions. *Id.* at 700.

Here, Petitioner was redetained in January 2020 solely in order to facilitate his removal. The Government has not provided any evidence that Petitioner ever violated the conditions of his release. Indeed, the Government states in its own brief that Petitioner was returned to custody "due to an outstanding warrant of removal and the imminent issuance of a travel document from the Pakistan consulate." (Doc. No. 34, at 3). Thus, the sole reason for Petitioner's detention was that his removal was imminent.

However, due to grave circumstances beyond the control of either party, the Government can no longer remove Petitioner to Pakistan in the foreseeable future. The COVID-19 pandemic has now reached at least 171 countries and disrupted international travel and the regular course of business both in the United States and around the world. *See, e.g.*, *Coronavirus Map: Tracking the Global Outbreak*, N.Y. Times (Apr. 1, 2020, 6:41 PM), https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html?action=click&module=Top%20Stories&pgtype=Homepage&action=click&module=Spotlight&pgtype=Homepage. The President of the United States has declared a National Emergency and extended national guidelines for social distancing, including avoiding nonessential travel, through April 30, 2020. Michael D. Shear, *Trump Extends Social Distancing Guidelines Through End of April*, (Apr. 1, 2020, 11:19 AM), https://www.nytimes.com/2020/03/29/us/politics/trump-coronavirus-guidelines.html. Meanwhile, Pakistan has banned all incoming international flights, first until April 4th, then extending the ban to April 11th; however, the situation there continues to worsen at a rapid pace, and it seems likely that the Pakistani government will continue to extend its national measures further. *See Pakistan Extends Suspension of International Flights till April 11: CAA*, AAJ (Apr. 2,

2020), https://www.aaj.tv/english/latest/pakistan-extends-suspension-of-international-flights-till-april-11-caa/; *see also* Madiha Afzal, *Pakistan Teeters on the Edge of Potential Disaster with the Coronavirus*, Brookings (Mar. 27, 2020), https://www.brookings.edu/blog/order-from-chaos/2020/03/27/pakistan-teeters-on-the-edge-of-potential-disaster-with-the-coronavirus/; Pamela Constable & Shaiq Hussain, *Pakistan Locks Down Province, Bans International Flights as Coronavirus Spreads*, Wash. Post (Mar. 22, 2020, 4:27 PM), https://www.washingtonpost.com/world/pakistan-locks-down-province-bans-flights-as-coronavirus-spreads/2020/03/22/9757707a-6be2-11ea-abef-020f086a3fab_story.html; Zia ur-Rehman et al., *"God Will Protect Us": Coronavirus Spreads Through an Already Struggling Pakistan*, N.Y. Times (Mar. 27, 2020), https://www.nytimes.com/2020/03/26/world/asia/pakistan-coronavirus-tablighi-jamaat.html?searchResultPosition=1. Given the current travel restrictions in place at the moment in both the United States and Pakistan, and given the speed and unpredictability with which the global pandemic has been spreading, the Government has sensibly halted attempts to obtain a flight itinerary or a date of removal for Petitioner. As the situation worsens both in the United States and in Pakistan and government extend restrictive measures accordingly, there is no significant likelihood that the Government will be able to remove Petitioner to Pakistan in the foreseeable future. With no significant likelihood of removal in the foreseeable future, Petitioner's detention, the sole purpose of which was to effectuate imminent removal, no longer serves its intended purpose, and thus, is unreasonable. Indeed, the present detention is all the more unreasonable in that it follows a previous detention, on the same grounds, of three years. Under 8 U.S.C. § 1231(a)(6) and *Zadvydas*, such unreasonable detention is unauthorized.

The Government argues that Petitioner's detention has been within the six months allowed under *Zadvydas* and that he has otherwise failed to show that his detention is of an indefinite duration. *Zadvydas*, however, does not require that Petitioner's detention be "indefinite" before allowing relief under habeas. Indeed, the Supreme Court has clarified that detention need not even continue until it "approaches constitutional limits" before detainees may successfully challenge their detention through habeas petitions. *Clark*, 543 U.S. at 384. Whereas the *Zadvydas* Court established a presumption that detention that exceeded six months would be unconstitutional, it did not require a detainee to remain in detention for six months or to prove that the detention was of an indefinite duration before a habeas court could find that the detention is unconstitutional. Because the purpose of Petitioner's detention is no longer possible in the foreseeable future, his continued detention is unreasonable, and thus, unauthorized by § 1231(a)(6), as interpreted by the Supreme Court.

Additionally, the Government argues that Petitioner's post-removal-period custody is governed by 8 C.F.R. §§ 241.4 and 241.13, which detail the process of revoking orders of supervision and returning them to detention. However, because Petitioner is arguing that his detention is unlawful, rather than arguing that the Government did not abide by or misconstrued its own regulations, the cited regulations do not bar habeas relief. Because Petitioner's continued detention exceeds the purpose of detention under 8 U.S.C. § 1231(a)(6), his detention is unauthorized and so the regulations are not relevant here.

The Government also argues that Petitioner is a flight risk, and thus, the Government can continue to detain him, pursuant to 8 U.S.C. § 1231(a)(6).[1] In so arguing, the Government relies

---

[1] The Government concedes that Petitioner is not a danger to the community, the other factor it may consider in continuing detention under § 1231(a)(6).

on a deportation officer's report, which found Petitioner to be a flight risk because he entered the United States with fraudulent documents and previously failed to comply with his removal. (Doc. No. 34-1, at 6). It is true that Petitioner entered the United States in 1995 with an "altered passport." *Id.* at 2. The Court takes seriously the use of fraudulent documents. However, this incident alone does not prove that Petitioner is a flight risk twenty-five years later. The Government's report also records three times when Petitioner "failed to comply" with the Government's attempts to remove him. *Id.* at 2–3. However, all three incidences occurred while Petitioner was detained in ICE custody and had pending applications for relief from removal. *See id.* (recording "failed to comply" entries for April 7, 2011, July 31, 2013, and September 13, 2013, while also recording that Petitioner was in custody between November 4, 2010 and September 17, 2013). It appears that Petitioner was not evading ICE agents, but rather, remained in detention while lawfully seeking relief through the immigration courts. Indeed, when Petitioner was released on an Order of Supervision in September 2013, he abided by all conditions of release for over six years, until he was detained again in January 2020 for imminent removal. Petitioner alleges that he reported to the ICE Field Office as requested ten times over the course of his release. (Doc. No. 1, at 9). The Government's report does not show any records of violations of supervised release conditions by Petitioner, nor has the Government produced any other evidence of such violations. Thus, the Court finds that the Government has not shown that Petitioner is a likely flight risk and may be released under supervision until his removal becomes foreseeable in the near future again.[2]

---

[2] Indeed, the current pandemic and the various restrictions adopted by national, state, and local authorities make flight even less likely. Petitioner is from Sugar Land, Texas, which is located within Harris County. Both the Governor of Texas and the Harris County Judge have issued stay-at-home orders until at least April 30, 2020, requiring that citizens stay at home except for essential activities. *See* Patrick Svitek, *Gov. Greg Abbott Tells Texans to Stay Home Except for Essential Activity in April*, Tex. Tribune (Mar. 31, 2020 10:00 PM), https://www.texastribune.org/2020/03/31/greg-abbott-texas-executive-order-closures/; Zach

Because there is no significant likelihood of removal in the foreseeable future, and because Petitioner is not a flight risk, the Court finds that the Government is exceeding its authorization under 8 U.S.C. § 1231(a)(6) by continuing to detain Petitioner. The Court will also note that timely release is especially important now during the COVID-19 pandemic. While the Court is aware of the measures taken by ICE in the Montgomery Processing Center, news reports of the virus's spread in prisons and detention centers within the United States and elsewhere demonstrate that individuals housed within detention centers nonetheless remain particularly vulnerable to infections. *See, e.g.*, Danielle Ivory, *"We Are Not a Hospital": A Prison Braces for the Coronavirus*, N.Y. Times (Mar. 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, dearth of soap, hand sanitizer, and protective gear, and impossibility of maintaining safe distance between inmates and guards as reasons prisoners are at particular risk of infection); *see also* Cat Cardenas, *"There's Been Absolutely No Change in Procedure": ICE Detention Facilities Are Not Prepared for the Coronavirus*, Tex. Monthly (Mar. 21, 2020), https://www.texasmonthly.com/news/ice-detention-facilities-not-prepared-coronavirus/ (citing similar concerns within privately run ICE facilities). If Petitioner endured significant exposure to those affected by the virus, that alone could further delay Petitioner's ultimate deportation. Given the circumstances, the Court finds that releasing Petitioner from detention is especially warranted.

Accordingly, the Court finds that the Government exceeds its authorization under 8 U.S.C. § 1231(a)(6) in continuing to detain Petitioner when there is no significant likelihood of removal

---

Despart, *Harris County Judge Lina Hidalgo Extends Stay-at-Home Order to April 30*, Houst. Chronicle (Mar. 31, 2020 7:37 PM), https://www.houstonchronicle.com/news/houston-texas/houston/article/harris-county-stay-at-home-order-extend-april-15169257.php. That, in combination with GPS monitoring, will make any likelihood of flight even smaller.

in the foreseeable future and when Petitioner is neither a danger to the community nor a flight risk. The Court therefore **GRANTS** Petitioner's Petition for Writ of Habeas Corpus and **ORDERS** the Government to release Petitioner from detention immediately, under appropriate conditions of supervised release.

    **IT IS SO ORDERED.**

    **SIGNED** at Houston, Texas on this the 2nd day of April, 2020.

    KEITH P. ELLISON
    UNITED STATES DISTRICT JUDGE